**SABRINA P. SHROFF**
ATTORNEY AT LAW

350 BROADWAY
SUITE 700
NEW YORK, NY 10013
Tel: (212) 625-3304
Fax: (212) 625-3939

October 22, 2007

**BY ECF AND HAND DELIVERY**

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
Quarropas Street
White Plains, New York 10601

    Re: <u>United States v. Jose Isidro De Haro-Rodriquez</u>,
      06 Cr. 453-01 KMK)

Hon. Judge Karas:

  I write on behalf of my client, Jose Isidro De Haro-Rodriquez, in advance of his sentencing. Mr. De Haro-Rodriguez has pled guilty in a timely manner to one count of Conspiracy to Distribute and Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. § 846.

  Jose Isidro De Haro-Rodriquez is a 25-year old Mexican citizen and father of two small children. Jose is "a simple and naïve young man" who is unlike many of the defendants that come before the court on similar charges. It is clear that his reasons for committing this crime were not simple. He was not motivated by greed for a lavish lifestyle. He participated in a crime because he felt an obligation to be responsible to his family and to listen to and respond to his father's plea for help, and his uncle's offer of a way to earn money for his family through narcotics smuggling. Pre-sentence Report ("PSR") at p. 35. Jose's father, Isidrio was in financial debt not just to the banks, but also to his own brother, David, who was a drug dealer. It was to keep his family safe and well that Jose agreed to do as told and became involved in drug trafficking.[1]

---

[1] The government informs that Mr. De Haro-Rodriguez gave conflicting stories during his proffers to the government, and did not mention his father's plight and request for help as the motivation to his becoming involved in the crime. The reason: Mr. De Haro-Rodriguez initially attempted to protect his father,

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 2

Jose's good qualities, and concomitant ability to reform, are readily apparent to anyone who spends time with him, and it was apparent to United States Probation Officer Coleen Tyler. In what is a rare occurrence, the United States Department of Probation recommends that the Court reject the advisory guidelines range of 87-108 months in this case. Impressed by the unique and oppressive family circumstances that led to his crime, and the level of Mr. De Haro-Rodriguez's genuine sense of remorse, the Probation Department recommends that 48 months in jail, followed by a two-year term of supervised release, as an appropriate sentence for this young man.

This letter is respectfully submitted to urge the Court to go further. A sentence must be no greater than necessary to accomplish the goals of sentencing. United States v. Booker, 534 U.S. 220 (2005); United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006). And, the sentence should reflect a personalized sentence. Id.; see also Nancy Gertner, What Yogi Berra Teaches About Post-Booker Sentencing, The Yale L. J. Pocket Part, 137 (2006), http://www.thepocketpart.org/2006/07/gertner.html (hereafter "Yogi Berra") ("trial judges [should] behave as judges—distinguishing between Guideline rules of general application and their application to the individual case"). For the reasons demonstrated herein, the goals of sentencing, including the goals of general and specific deterrence, will best be met if Mr. De Haro-Rodriguez is sentenced to the 17 months he already has served in prison, and is immediately deported back to Mexico, so that he can start rebuilding his life and the lives of his family.

### STATEMENT OF FACTS

**Jose Isidro De Haro-Rodriquez**

as well as his wife and two children. The government does concede that Jose's father impacted Jose's decision to cooperate, and that there was a perceptible difference in Jose's emotional state after his father visited him at the MDC. These matters are discussed in greater detail below in the Statement of Facts.

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 3

    Jose Isidro De Haro-Rodriquez was born and raised in extreme poverty in Compostela, Mexico. His father, Isidro, was a farmer of corn and flowers; his mother, Esperanza, was a housewife and mother to five children. Although the fourth of five children, Jose was the first-born male. PSR ¶¶ 35-36. Accordingly, he was always looked upon to be responsible for his family, to lead and support the family, regardless of his age and regardless of what the family's needs were. See id. at page 15-16 ("It appears that the defendant has felt pressure all of his life to assist his father financially.").

    Jose's father, Isidro, has been in debt to Mexican banks most of his life, as the result of years of failing crops and the inability to repay prior loans. PSR at pp. 15-16. When Jose was just seven years old, Isidro relocated to the United States. For the next seven years, Jose's father lived in the United States, trying to earn enough money working at a cow-milking facility in the U.S. to pay off his bank debts. Meanwhile, Jose attended school and helped work the family farm, trying his best to be the man of the house. Id. ¶ 36.

    When Jose was 14 years old, his father returned to the family farm, still poor and still trying to work off his bank debts. PSR ¶35. Conditions on the farm worsened, and the family was now even deeper in debt. Things got so bad that it no longer made sense for Jose to stay working on the farm. Id. ¶39. Jose was forced to leave his home and school and move to Puerto Vallarta in the hopes he would find a job. In Puerto Vallarta, he lived with his sister and worked cleaning planes and providing security at the Puerto Vallarta airport. Whatever money he made went to support his family. Id. ¶¶ 39, 49.

    When Jose was a teenager, his father Isidro fell ill and was diagnosed with Neurocysticercosis, a progressive and painful parasitic disease of the central nervous system. PSR ¶ 39; Letter from Illiana De Haro-Rodriguez (attached hereto as Exhibit A).[2] As his disease worsened and the seizures and

---

[2] According to the Center for Disease Control, Cysticercosis is an infection caused by tapeworm larvae. Infection occurs when

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 4

headaches increased in frequency and severity, Isidro found it harder and harder, and then impossible, to work the family farm. The family lived in dire poverty - poverty of a type only seen in third world countries. See photographs of the family home, attached hereto as Ex. B. Isidro now finds himself in and out of the hospital because of the disease. Illiana De Haro-Rodriguez Letter (Ex. A).

In 2001, Jose's mother, Esperanza, was diagnosed with cancer. Jose moved back to his parents' home in Compostela, to help his father care for his mother, whose illness quickly became debilitating. PSR ¶ 39.

Jose's return to Compostela had one bright spot: he met, fell in love with, and married, Susannah Rubalcaba. Together, they had two sons, Erick Isidro De Haro, age three, and Jose Aron De Haro, who turned one on September 21, 2007. It should be noted that Jose has never met his youngest son. He was arrested while his wife was pregnant, and neither she, nor her sons can afford to travel to the United States to see Jose. PSR ¶ 38.

For three years, Jose cared for his mother as she grew weaker and weaker and, finally, died. Id. ¶¶ 39, 41. Esperanza's death dealt a mortal blow to the De Haro-Rodriguez family and to Jose. Esperanza had been the family's anchor; the one who remained behind when Isidro left for seven years to work in the United States. It was she who had raised Jose and his siblings.

Jose always had led a law-abiding life. PSR ¶¶ 32-34; id. p. 15 ("The instant offense represents the defendant's first known conflict with the law."). In this regard, Jose had never looked for ways to earn money by working in the drug business,

---

the larvae enter the body and form cysticerci, or cysts. When cysticerci are found in the brain and spinal cord, the condition is called Neurocysticercosis. Seizures, headaches, confusion, brain swelling, and even death can occur as a result of this parasitic infection of the brain and central nervous system. See www.cdc.gov/ncidod/dpd/parasites/cysticercosis.

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 5

declining his uncle David's offers even when his own father, too sick to farm, completed two trips to the U.S. to smuggle drugs for David De Haro. PSR ¶ 18. It was only when life finally became too desperate, and he felt that he had no other options left, that Jose said yes to his Uncle.

Unlike many defendants, and it was not lure of the wealth that was to come that was the primary motivator for Jose. Rather, it was Jose's misplaced sense of family obligation – the feeling that he should support his wife and children, that he should pay his uncle back for all the help he'd given his father – that led Jose to believe he could not say no to his uncle's offer. Jose truly believed he was responsible for alleviating some of the pressures that his sick father bore. There was never a sense of or desire for a big home, or wealth easily obtained. Rather, it was always a sense of I owe my wife, my children and my father for all he had given up for the family.

We do not ask the Court to forgive Jose for succumbing to familial blandishments. We merely ask that the Court consider the cumulative pressures that weakened Jose's judgment, and led him to make the error that has destroyed his present and threatens to destroy his future.

His entire life, Jose had felt pressure to assist his father and siblings financially. PSR ¶ 18. Now, his mother recently had died after a terrible and expensive battle with cancer, his father was too sick to work, his wife was pregnant with his second child, he had lost his job, and his entire family still needed him to support them. Id. ¶¶ 18, 41. All the while his sense of a crisis looming ahead – his inability to support his family. Overwhelmed, Jose agreed to courier drugs to the United States for his uncle.

### The Criminal Offense

Jose's uncle needed someone to shepherd a drug shipment from Texas to New York. The heroin was sewn into the lining of a box of clothing and shipped via Greyhound from El Paso, Texas to New York City. PSR ¶¶ 6-16. Jose's uncle promised Jose $1,000 to send the package from El Paso, $1,000 to receive the

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 6

package in New York, $1,000 to deliver the package to the customer, and $1,000 to cover his airplane tickets and hotel expenses. Id. ¶ 18. Jose agreed to participate and moved drugs during three trips, including the trip where he was caught. Id. All told, Jose made five trips. The remaining two did not involve drugs. One was a failed trip, and the other trip involved picking up money for his uncle.

**The Attempted Proffer**

Even after his arrest, Jose Isidro continued to be pressured by father and continued to put his father's welfare above his own. Specifically, Jose tried to co-operate with the United States Attorney's Office. While considering cooperation, and trying to participate in controlled phone calls to Mexico, his father Isidro visited him at the Metropolitan Detention Center. Isidro warned his son that turning in his father and uncle was not an option to be pursued. Isidrio hinted at the repercussions that would follow cooperation, and Jose worried for his young wife and two children. Worse still, his father's interference caused him to second guess his attorney and almost led him to ignore solid legal advice and think it was only right to proceed to trial. The government concedes that Mr. De Haro-Rodriguez appeared "sad" following his father's visit, and told the government that he simply could not bring himself to co-operate against his father.

There is no doubt that Jose was not truthful to the government when he came in to try and cooperate with the authorities. He was just too scared and guilt ridden to set up his father and uncle for an arrest. But again, his failure was a result of his sense of obligation to do right by his father and his uncle, both of whom had made many sacrifices for his mother and him. Jose Isidro also worried about the safety of his wife and children and faced the proverbial Hobson's choice.

**The Severe Impact Of Incarceration**
**Upon Mr. De Haro-Rodriguez And His Family**

In reaching its sentencing decision, the Court should bear in mind the hardships Jose and his wife have faced because of

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 7

his obligations to his father.

Instead of supporting his wife and two sons, he has spent the last 17 months unable to support or see them. In this regard, the Court should be aware of how difficult prison has been for Jose. Unlike other prisoners, Jose receives very little commissary money - his family cannot afford it. Jose works as an orderly at the MDC, and does work for other inmates in exchange for a can of sardines or other commissary.

Unlike other prisoners, Jose cannot see his wife or children. See PSR ¶¶ 20, 38. Thus, for the last 17 months, and until the day he leaves prison, Mr. De Haro-Rodriguez has been, and will be, utterly alone and unsupported.

As heavy as the price paid (and being paid) by Jose, the price paid by his young family is far heavier. While it is true that the families of all incarcerated defendants suffer, they often also are the ones who (unlike here) benefited from the illegal conduct. Post-incarceration, neither Jose nor his wife, have received any assistance from either his father or his uncle. PSR ¶ 20. Unable to support herself without Jose, his wife and children were forced to move back into her father's house. Things are extremely difficult. Susannah's father makes his living as a washing machine repairman; he cannot afford the additional burden posed by his daughter and grandchildren. PSR ¶ 38. Jose's children are being raised without a father. His three-year old barely remembers him; his one-year old has never met him. Id. There is no possibility of an education for the three year old, and Jose's absence will certainly change his son's future in a very concrete and negative manner.

In addition to his wife and kids, his siblings also suffer because of Jose's absence. In her letter to the Court, Jose's sister, Illiana, describes both the intense pressures that led Jose to break the law, and the damage Jose's absence is causing her and her siblings:

> I just want to explain to you what has been happening in my brother's life for the past few years. Three years ago my mother was diagnosed with cancer and died

**SABRINA P. SHROFF**
  ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 8

>one year after her diagnosis. My mother was the center of our family and losing her turned our lives upside down. During the same time my father had to leave his job since he was diagnosed with Neurocisticerosis - a parasitic disease - eight years ago. Once my father left his job Jose became the sole provider not only for his wife and two children, but for my father, brothers and me. I know that whatever he did he did so because he felt trapped and thought there was no way out.
>
>Time has passed since my brother's incarceration and many things have changed. My father's health condition continues to worsen and he is now in the hospital. I am married now and my husband and I help to care for my brothers, but I desperately need Jose's help and support.

Letter from Illiana De Haro-Rodriguez (Ex. A).

**Mr. De Haro-Rodriguez's Excellent**
<u>**Prospects For Rehabilitation and Non-Recidivism**</u>

    Every person involved in this case is convinced of the sincerity of Mr. De Haro-Rodriguez's shame and remorse. As recognized by USPO Tyler, Mr. De Haro-Rodriguez has no criminal background or history of prior criminal conduct. PSR ¶¶ 32-34. His offense represents a marked deviation from an otherwise law-abiding life, and is the result of the death of his mother and the other mental and emotional blackmail that combined to overwhelm him.

    As important, every person involved in this case is convinced that Mr. De Haro-Rodriguez poses no threat of recidivism. Jose has spent his time in prison quietly and productively, working as an orderly. <u>See</u> performance reviews attached hereto as Ex. C. If given the chance by the Court, he is determined to never let anything lead him to commit another crime. PSR ¶¶ 19, 41, and pp. 15-16. Simply put: he will never break the law again.

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 9

Jose's determination to do better is echoed by his immediate family. We ask that the Court consider the statements of Jose's sister, Illiana. She notes that Jose "is a good person, a hard worker, honest and loyal," as well as a "wonderful husband and father." PSR ¶ 41; Letter from Illiana De Haro-Rodriguez (Ex. A).

Having lost their mother, the family is dreading the loss of a brother. In the hope that the Court will sentence him to time served, the family has found a job for Jose upon his return. Specifically, attached hereto as Exhibit D is a letter from Enrique Nora Aguirre, Coordinator of the Cochinilla Rosada Campaign, confirming an offer of employment for Jose as a reviewer of produce quality, at a monthly salary of 8,000 pesos.

## DISCUSSION

### A NON-GUIDELINES SENTENCE OF TIME SERVED IS REASONABLE AND APPROPRIATE IN LIGHT OF THE DEFENDANT'S INDIVIDUAL CIRCUMSTANCES

Just weeks ago, the Second Circuit reiterated that, post-United States v. Booker, 534 U.S. 220 (2005), a sentence must be based upon an individualized analysis of the particular characteristics of the defendant and his crime. United States v. Cavera, 05-4591-CR (2d Cir. October 11, 2007), Slip Op. at 6-7.[3] Accordingly,

> District judges are afforded wide latitude to impose non-Guidelines sentences based on case-specific applications of the § 3553(a) factors. For example, in Jones [460 F.3d 191 (2d Cir. 2006)] the district court had imposed a non-Guidelines sentence that was 50 percent below the bottom of the Guidelines range based on the judge's "gut feeling" about the defendant

---

[3] In Cavera, the Second Circuit took the unusual step of withdrawing a previously issued majority opinion and substituting another opinion, to provide additional clarity regarding the importance of individualized sentencing in the post-Booker sentencing regime. See United States v. Cavera, 05-4591-CR (2d Cir. October 11, 2007), Slip Op. at 2 n.1.

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 10

>and findings on his personal circumstances. <u>Id.</u> In affirming the sentence we observed that a district court may consider the defendant's background together with the judge's "own sense of what is a fair and just sentence under all the circumstances," thereby fulfilling his or her "historic role." <u>Id.</u> at 195-96.

Slip Op. at 16-17; <u>United States v. Crosby</u>, 397 F.3d 103, 114 (2d Cir. 2005) (emphasizing Second Circuit's expectation that post-Booker sentences will achieve more "individualized justice"); <u>see also</u> <u>Yogi Berra</u> (urging courts to stop imposing sentence in same formulaic manner as they did when guidelines were mandatory, and instead focus on the individual circumstances of each defendant in imposing sentence). Here, a case-specific application of the 3553(a) factors to Mr. De Haro-Rodriguez's personal circumstances supports a sentence of time served.

*First*, regarding the history and characteristics of the offender, it is clear that, while he succumbed to the pressures of immense poverty and to the pressure he felt to help support his family. Mr. De Haro-Rodriguez is otherwise a decent, kind, and hard-working person.[4] As determined by the Probation Department after review and interview, and further attested to by his family, Jose is a humble and good person who made one terrible, tragic, and entirely anomalous error in judgment.

*Second*, as far as the nature and circumstances of the crime is concerned, Mr. De Haro-Rodriguez was, at best, a "minor participant" in the narcotics conspiracy. As the parties proceed to sentence by plea we do not argue here that a role adjustment is proper under USSG 3D1.1. Instead we ask the Court to consider that Mr. De Haro-Rodriguez was a low level participant in the conspiracy, and nothing more. His actions, from start to finish, were all entirely menial; he mailed the

---

[4] Throughout his incarceration at the MDC, Mr. De Haro-Rodriguez has worked doing laundry and the chores of other inmates. <u>See</u> Ex. C (performance reviews).

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 11

drugs in El Paso, and picked them up and delivered them in New York. See PSR ¶¶ 6-16. He had no knowledge of the conspiracy beyond his uncle, on the one hand, and the person he was meeting in New York, on the other. Certainly, Mr. De Haro-Rodriguez had no relationship or involvement with the greater conspiracy, and remained entirely unaware of the nature and scope of the criminal enterprise. Nor did he have any stake in the success of the greater conspiracy, being paid a flat fee for his services.

*Third*, in considering the needs of the public, there is no indication that Jose is dangerous and, similarly, there is no indication that the public needs any particular protection from him. Mr. De Haro-Rodriguez is not the type of defendant whom society would fear.

The Court also should consider that, after his incarceration, Mr. De Haro-Rodriguez is subject to immediate deportation, sparing the United States public from any further contact with him. Further, it is respectfully submitted, that the needs of the public include the needs of Mr. De Haro-Rodriguez's family and children. Surely, society has an interest in avoiding the unnecessary destruction of the De Haro family.

*Fourth*, as the Probation Department expressly agrees (PSR at pp. 15-16), the goals of promoting respect for the law, just punishment for the offense, and deterrence is amply served by the imposition of a non-guidelines sentence in this case.

It is obvious that Mr. De Haro-Rodriguez has respect for the law. The fact that, after years of grinding poverty and blandishments, he finally gave in to his uncle's offers should not entirely diminish the years he spent earning an honest and very meager living to support his entire family.

As to specific and general deterrence, Mr. De Haro-Rodriguez has realized the error of his ways. He is sincerely remorseful and ashamed for the harm he has brought upon his siblings, wife, and children. The time already spent in prison,

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 12

and the financial and emotional impact that time has had upon him and his family, constitutes adequate specific deterrence as to him. He will never break the law again. Similarly, it is a sentence harsh enough to generally deter others who may be considering becoming narcotics couriers.

*Fifth*, in considering the possibility of vocational training and education, Mr. De Haro-Rodriguez is not in need of any drug program. He has no drug problem. PSR ¶ 44. Similarly, even as he worked to support his family, Mr. De Haro-Rodriguez made sure to finish high school, and attended one year of vocational training thereafter. Id. ¶¶ 46-48. Thus, while vocational training may be of some slight benefit to him, it certainly does not outweigh the benefits involved in returning Mr. De Haro-Rodriguez to Mexico, where he can begin rebuilding his life with his wife and children, and begin working at the quality control job already arranged by his family. See Ex. D (employment offer). Additional jail time will only serve to wreak further havoc upon Jose, his wife, and their two children, and lessen Jose's chances at making something better from his life.

In sum, a time-served sentence meets each of the 3553(a) factors and the overarching goal of a sentence no greater than necessary to accomplish the goals of sentencing. United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006).

**CONCLUSION**

Applying the purely advisory guidelines here would result in a sentence inappropriate to the defendant, the facts, and the crime. Instead, for all the foregoing reasons, it is respectfully requested that the Court sentence Mr. De Haro-Rodriguez to the 17 months he already has served in prison.

Respectfully submitted,

/s/ SPS
Sabrina P. Shroff

SPS/hls
Exhibits A-D

**SABRINA P. SHROFF**
ATTORNEY AT LAW

Honorable Kenneth M. Karas
October 22, 2007
Page 13


cc:   AUSA Rebecca Monck
      (by ECF)