

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

October 31, 2007

By Facsimile
The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601

      Re:    <u>United States v. Jose Isidro DeHaro Rodriguez</u>
              06 Cr. 453 (KMK)

Dear Judge Karas:

      This matter is scheduled for sentencing on November 5, at 3:30 p.m.  The Government respectfully submits this letter in response to the defendant's sentencing submission dated October 22, 2007 seeking a below-Guidelines sentence of time served, or approximately 17 months' imprisonment.  For the reasons set forth below, the Government respectfully requests that the Court sentence the defendant within the applicable Guidelines range of 87-108 months' imprisonment, and believes that such a sentence is reasonable.

## Background

      1.    <u>The Offense of Conviction</u>

      As set forth in the Complaint and Presentence Investigation Report, on or about April 27, 2006, law enforcement officers with a local anti-narcotics task force in El Paso conducted a routine canine search of freight at a Greyhound Bus Terminal in El Paso.  During the routine search, the canine alerted on a box, which was addressed to "Isidro DeHaro" at a fake address in New York.  Law enforcement obtained a search warrant for the box, and upon inspection, discovered clothing containing a whitish powdery substance sewn into the lining.  Field testing of the substance within the lining of the clothes revealed that it contained heroin.

      Following the discovery of the heroin, local agents obtained a surveillance tape from the Greyhound Bus Terminal office.  The tape depicts the defendant approaching the counter with a large bag, obtaining a box from the Greyhound employee, and emptying the contents of the bag into the box. The box was then labeled.

      The local law enforcement officials in El Paso notified the Drug Enforcement

The Honorable Kenneth M. Karas
October 31, 2007
Page 2

Administration's Strike Force in Manhattan about the discovery of the heroin-lined clothing in the box, and the agents agreed to perform a controlled delivery of the box in Manhattan.

     On or about May 2, 2006, law enforcement agents prepared a substitute box and brought it to the Greyhound counter at the Port Authority Bus Terminal in Manhattan.[*] An undercover agent was placed behind the Greyhound counter, and other law enforcement officers established surveillance in strategic locations at the Port Authority Bus Terminal. At approximately 4:30 p.m., the defendant approached the Greyhound counter in Port Authority and asked for the box. The employee left the counter, went into another room, and informed the undercover agent that an individual was asking for the box. The undercover agent took the substitute box that had been prepared to the counter, gave it to the defendant, and had the defendant sign for the box.

     Law enforcement agents then observed the defendant leave the Greyhound counter, and watched as he began to remove labels from the box, all while walking towards the exit. Immediately before the defendant got to the exit, he stopped at a kiosk vendor, appear to engage in conversation with the vendor, handed the vendor money, and received blue plastic bags in return. The defendant then attempted to open the box and was placed under arrest.

     A laboratory analysis of the substance within the lining of the clothing in the box revealed that the amount of heroin that the defendant shipped was approximately 6.7 kilograms.

     2.     <u>Certain of the Defendant's Proffer Statements</u>

     The defendant proffered with the Government on four occasions. Prior to each of his meetings with the Government, the defendant executed an agreement that set forth the parties' understanding of the terms governing the meetings.

     Certain of the facts recited by the defendant in his sentencing submission are inconsistent with what he said during his proffer sessions.[**] For example, as noted by the defendant in footnote one of the October 22, 2007 submission, the defendant failed to mention his father's plight as an influence in his decision to join the conspiracy. <u>See also</u> Def. Ltr. at 5. To the contrary, the defendant informed the Government that, during the first trip he made to New York to deliver a package of narcotics-lined clothing, his father told him that he did not want the defendant involved in the business, and would feel bad if something happened to him. Moreover, the defendant also informed the Government that, during their trip back to Juarez

---

     [*] The agents learned that an individual visited the Greyhound counter at the Port Authority Bus Terminal in Manhattan on May 1, 2006 to inquire about the status of the box. The individual was informed that it had not yet arrived and was instructed to return the next day.

     [**] The defendant was not truthful during his first two proffer sessions with the Government, but the inconsistencies result from statements made during his third meeting.

The Honorable Kenneth M. Karas
October 31, 2007
Page 3

following the delivery of the first package, his father reiterated that he did not want the defendant involved in sending packages.

The defendant's letter argues at one point that the defendant declined his uncle's offers to earn money in the drug business even as his father's health declined, and only accepted when he felt he had no other options. See Def. Ltr. at 5. However, the defendant informed the Government in the proffer that in approximately August 2005, he accepted an offer of employment from his uncle, working at his uncle's junkyard in Juarez. While working in the junkyard, he was approached by the uncle about earning extra money by taking trips with packages. The defendant agreed and his first package was shipped a few days later.

Another inconsistency involves the defendant's knowledge of other co-conspirators. See Def. Ltr. at 11 ("He had no knowledge of the conspiracy beyond his uncle, on the one hand, and the person he was meeting in New York, on the other."). Of course, the defendant knew about the participation of his father in the conspiracy (and readily acknowledges such participation in his sentencing submission), but he also informed the Government in a proffer of at least three other co-conspirators who were involved in the heroin transportation business with him during the time that he worked for his uncle.

**Argument**

The Court should sentence the defendant within the applicable Guidelines range of 87 to 108 months. The Guidelines still provide strong guidance to the Court in light of United States v. Booker, 125 S. Ct. 738 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), and, given the seriousness of the offense and the defendant's role, a Guidelines sentence is reasonable.[*]

Here, the application of the Guidelines to this defendant results in a sentencing range of 87 to 108 months. While the defendant's history and characteristics are sympathetic, the defendant's repeated trips for his uncle were vital to the success of the conspiracy. Such repeated and deliberate actions do not counsel in favor of leniency. Nor are the defendant's actions indicative of someone who was a minor, or low-level participant in the conspiracy, especially given the amount of heroin that was entrusted to the defendant to deliver on his last trip: 6.7 kilograms. Moreover, during one of his trips, the defendant was sent to New York solely for the purpose of picking up a suitcase (which he thought contained money) and returning it to his

---

[*] The Probation Department recommended a below-Guidelines sentence of 48 months' imprisonment. The Government notes that in the justification section for the recommended sentence, the Probation Department stated, among other things, that the defendant indicated that he took three trips to New York, moving drugs on only two occasions. The defendant's sentencing submission recognizes that the defendant took five trips, moving drugs on three of those trips, and delivering money back to Mexico on a fourth.

The Honorable Kenneth M. Karas
October 31, 2007
Page 4

uncle's worker in Mexico, again demonstrating a level of trust in the defendant beyond that of a simple mule or courier. When considering those actions against the other 3553(a) factors outlined in the defendant's sentencing letter, the Government submits that a Guidelines range is appropriate.

## Conclusion

For all of these reasons, the Government respectfully requests that the Court impose a prison sentence within the 108 to 135 months' imprisonment range provided by the Guidelines.

    Respectfully submitted,

    MICHAEL J. GARCIA
    United States Attorney


By:   _____/s/_____
    Rebecca Monck Ricigliano
    Assistant United States Attorney
    (212) 637-2486


cc:    Sabrina Shroff, Esq. (Via electronic mail/ECF)
       Colleen Tyler, United States Probation Officer (Via Facsimile)